**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| ELAINE K.,[1] | : | Case No. 3:24-cv-00320 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ORDER**

Plaintiff filed an application for Disability Insurance Benefits in June 2022.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because she was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, this Court

AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management
of the Judicial Conference of the United States has recommended that due to significant privacy concerns
in social security cases federal courts should refer to claimants only by their first names and last
initials.").

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since January 7, 2018. At that time, she was fifty years old. She was fifty-three years old on the date last insured and so was considered a "person closely approaching advanced age" during the relevant period.[2] 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 33-54), Plaintiff's Statement of Errors ("SE," Doc. No. 7), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The period at issue in this matter begins January 7, 2018, the alleged onset date of disability, and ends December 31, 2020, the date Plaintiff last met the insured status requirements of the Social Security Act. (AR, Doc. No. 6-5 at PageID 236.)

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.  FACTS

### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:  Plaintiff did not engage in substantial gainful activity during the period at issue from the alleged onset date of January 7, 2018 through the date last insured of December 31, 2020.

> Step 2:  She had the severe impairments of degenerative disc disease, osteoarthritis, carpal tunnel syndrome, degenerative joint disease of the right knee, fibromyalgia, migraine headaches, sleep apnea, and obesity.

Step 3:    She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "Standing for no more than 4 hours and walking for no more than 3 hours at any one time. No more than frequent reaching, handling, fingering, or feeling with the bilateral upper extremities. No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, and scaffolds. No exposure to dangerous mechanical moving parts, extreme heat, humidity, cold, extreme loud noise, such as jack hammering, or extreme bright lights, such as those on a movie set."

She was unable to perform any of her past relevant work.

Step 5:    Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed.

(Decision, Doc. No. 6-2 at PageID 38-49.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability. (*Id.* at PageID 49-50.)

### B.    Migraine Headaches

#### 1.    Disability reports and hearing testimony

Plaintiff alleged that she was disabled by several physical impairments, including migraine headaches. (*See, e.g.*, AR, Doc. No. 6-6 at PageID 63-64, 255, 328-29.) Plaintiff testified during the March 2024 hearing that her migraines occurred approximately twelve to fifteen times per month. (*Id.* at PageID 63.) She said that medication helped remedy her migraines, but only within approximately twenty-four hours. (*Id.*) She said that she needed to "stay in a dark[,] quiet place" while she "wait[ed] them out." (*Id.*)

Plaintiff said that she went to the emergency room for treatment around once per month. (*Id.*) Plaintiff also said that she experienced the same type of migraine headaches—and at approximately the same frequency—for several years prior to the alleged disability onset date, while she was working at Dole Fresh Vegetables and KinderCare. (*Id.* at PageID 63-64; *see also* AR, Doc. No. 6-6 at PageID 273.)

### 2. Medical records

Several months prior to the alleged disability onset date in August 2017, Plaintiff sought emergency room treatment for a migraine. (AR, Doc. No. 6-7 at PageID 509.) She said her prescribed medications of Imitrex and Maxalt provided insufficient relief. (*Id.*) Plaintiff reported intermittent headaches during a primary care visit in November 2017 and said they were occurring more frequently. (*Id.* at PageID 461.) Plaintiff's provider increased her Nortriptyline dosage. (*Id.* at PageID 463.)

During a primary care visit shortly after the alleged disability onset date in January 2018, Plaintiff denied having headaches. (AR, Doc. No. 6-7 at PageID 449.) Plaintiff's medical records show that she did not seek or obtain treatment for headaches until October 2019, when Plaintiff visited a new provider to establish primary care. (AR, Doc. No. 6-8 at PageID 759.) Plaintiff told Sarah Barr, M.D. that she woke up with migraine headaches on "most days" but also said she had not taken any medication to treat her headaches during the past year. (*Id.*) Plaintiff said she did not want to take a prophylactic medication and Dr. Barr restarted Sumatriptan (Imitrex). (*Id.* at PageID 760.)

At a follow-up visit in February 2020, Plaintiff said she was "getting relief" with Imitrex and again declined a prophylactic medication. (AR, Doc. No. 6-8 at PageID 749-

50.) Plaintiff told Dr. Barr in May 2020 that she experienced only occasional headaches that were "controlled" with Imitrex. (*Id.* at PageID 744.) In August 2020, Plaintiff said she was "waking up with [headaches] and [could] be congested," but Dr. Barr did not change her medication. (*Id.* at PageID 738-39.)

Progress notes dated during the relevant period documented no significant neurological abnormalities. (AR, Doc. No. 6-7 at PageID 452-53; AR, Doc. No. 6-8 at PageID 739, 745, 750, 755, 760.) Progress notes from primary care visits occurring after the date last insured and through August 2021 contain no references to any migraine-related complaints. (*Id.* at PageID 711-22.) In December 2021, almost a year after the expiration of her insured status, Plaintiff complained of only occasional headaches and said her migraines were "less frequent." (*Id.* at PageID 704.)

### C.     Fibromyalgia

#### 1.     Disability reports and hearing testimony

Plaintiff complained of widespread pain throughout her body, which she attributed to fibromyalgia, among other conditions. (*See, e.g.*, AR, Doc. No. 6-6 at PageID 62-66, 247, 255, 328-29.) Plaintiff stated that the combination of her physical conditions caused difficulty with lifting, walking, squatting, bending, standing, kneeling, using her hands, memory, and concentration. (*Id.* at PageID 262.) She reported that she experienced fatigue and had difficulty sleeping at night due to insomnia. (*Id.* at PageID 258.) She stated that she could prepare simple meals and do light housework, although her husband helped care for their small dog. (*Id.*)

During the March 2024 hearing, Plaintiff testified that she experienced pain in her back, neck, knees, feet, and hands. (AR, Doc. No. 6-2 at PageID 62-63.) She said that she received several types of pain injections and took muscle relaxers and anti-inflammatory medications during the relevant period. (*Id.* at PageID 65-66.) Plaintiff rated her pain level at a seven out of ten (with ten being the highest) on most days. (*Id.* at PageID 66.)

### 2. Medical records

Plaintiff saw rheumatologist Mujeeb Ranginwala, M.D. for joint pain complaints in September and October 2016, well over a year before the alleged disability onset date. (AR, Doc. No. 6-9 at PageID 1067-76.) Dr. Ranginwala diagnosed fibromyalgia and prescribed Zanaflex and Relafen. (*Id.* at PageID 1072-76.)

Plaintiff thereafter sought treatment from her primary care provider and a pain management physician for her pain complaints. (*See* AR, Doc. No. 6-7 at PageID 435, 475.) Plaintiff's primary care provider prescribed Nortriptyline for fibromyalgia, and her pain management physician prescribed Norco and Gabapentin for her radiculopathy complaints. (*See, e.g.,* AR, Doc. No. 6-7 at PageID 476, 417.) Progress notes dated through January 2018 showed some examination abnormalities such as positive facet loading, limited range of motion due to pain, and tenderness of the lumbar spine and hip joints. (AR, Doc. No. 6-7 at PageID 398, 401, 407, 411, 415-16, 419-20, 453, 476.) The progress notes also documented several normal findings, including normal motor functioning, normal sensation, and a normal gait. (*Id.*) Significantly, Plaintiff stated on several occasions during that time that her medications were "helping to keep her more

comfortable and able to stay more active." (AR, Doc. No. 6-7 at PageID 397, 400, 406, 410, 414, 418, 422.) Plaintiff also stated that her pain was "tolerable." (*Id.*)

The medical records show that Plaintiff did not have any further medical treatment until she consulted Dr. Barr well over a year and a half later, in October 2019. (AR, Doc. No. 6-8 at PageID 759.) At that time, Plaintiff reported that her fibromyalgia pain was more severe and that she had not taken any medication for it "in a while." (*Id.*) Plaintiff stated that Tizanidine had previously been "working well for her." (*Id.*) Dr. Barr restarted Tizanidine, Venlafaxine (Effexor), and Gabapentin. (*Id.* at PageID 760.)

Plaintiff reported later that month that her fibromyalgia "improved some" since restarting Effexor. (AR, Doc. No. 6-8 at PageID 754-55.) Dr. Barr increased her Effexor dosage and changed her prescription to an extended-relief tablet. (*Id.*) At the next visit in February 2020, Plaintiff complained of increased fatigue and increased irritability in the evenings since switching to extended-relief Effexor, but said she was "getting relief" with less morning stiffness with Gabapentin and Tizanidine. (*Id.* at PageID 749.) Dr. Barr changed Plaintiff's Effexor dosage to twice per day. (*Id.* at PageID 750.)

Plaintiff reported in May 2020 that she was increasingly fatigued and it "[could] be difficult to function." (AR, Doc. No. 6-8 at PageID 744.) However, although Dr. Barr had prescribed twice-daily Tizanidine, Plaintiff said she generally took Tizanidine only at night. (*Id.*) Plaintiff also stated she had been "packing up to move" for a few weeks. (*Id.*) Dr. Barr instructed Plaintiff to take Tizanidine every eight hours. (*Id.*)

In August 2020, Plaintiff reported more back flare-ups but also said that she had completed her move and unpacking one week earlier. (AR, Doc. No. 6-8 at PageID 738.)

She had noticed "some improvement" with the increased Tizanidine dosage. (*Id.*)
Although she also experienced benefit from Gabapentin, she forgot her afternoon dosage
approximately three days per week. (*Id.*) Plaintiff presented to Dr. Barr for suspected
COVID-19 exposure in December 2020, shortly before the date last insured, but she did
not mention any of her other conditions. (*Id.* at PageID 728.)

Significantly, on only one occasion during the relevant period—in October
2019—did Dr. Barr document examination abnormalities of tenderness of several joints
and muscles. (AR, Doc. No. 6-8 at PageID 760.) Dr. Barr otherwise documented several
normal findings including normal movement of the extremities, no swelling, normal
sensation, and no motor weakness. (*Id.*) Moreover, the other progress notes dated during
the relevant period documented no significant musculoskeletal or neurological
abnormalities. (AR, Doc. No. 6-7 at PageID 452-53; AR, Doc. No. 6-8 at PageID 739,
745, 750, 755.) In March 2021, after the date last insured, Plaintiff told Dr. Barr that her
hands hurt the most. (AR, Doc. No. 6-8 at PageID 722.) But Dr. Barr did not document
any significant abnormalities of the extremities upon a physical examination, and she
continued Plaintiff on her current fibromyalgia medications. (*Id.* at PageID 723.)

### D.      The ALJ's Decision

The ALJ concluded that although Plaintiff's medically determinable impairments
could reasonably be expected to cause her symptoms, the "intensity, persistence and
limiting effects of these symptoms are not entirely consistent with the medical evidence
and other evidence in the record . . . ." (Decision, Doc. No. 6-2 at PageID 46.)

10

With respect to Plaintiff's pain complaints and migraine headaches, the ALJ explained his analysis of Plaintiff's symptoms as follows:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because through the date last insured, [Plaintiff's] symptoms appear to have been well-controlled with medications. She noted that her migraines resolved relatively quickly, and very few of her treatments during this period were substantially invasive in nature. In addition, [Plaintiff's] motor strength and gait appeared normal on examination, both before and well after the date last insured (see, for example, Exhibits 2F at 4, 42, 3F at 22, 4F at 15, 10F at 67, 12F at 2, 10), and even as recently as January 2024, her left hand grip strength had only reduced to a four out of five (Exhibit 10F at 15). Overall, even to the extent that [Plaintiff's] subjective complaints of limitation are consistent with the record, prior to the date last insured, they are inconsistent with a finding of disability because, despite the limitations noted above, [Plaintiff] was still able to engage in work that existed in significant numbers in the national economy, as explained in more detail below.

(*Id.* at PageID 46.)

The ALJ also explained why he included certain limitations in the RFC:

> To the extent that [Plaintiff's] subjective complaints of pain and limitation are supported by the record, the undersigned finds that she is limited to performing light exertional work. This caps the amount of weight that [Plaintiff] can be required to lift, and limits the amount of time that she can be required to stand and/or walk during the workday, both at any one time and in total during an eight-hour shift. Postural limitations have been imposed as noted in order to restrict [Plaintiff] from jobs that involve tasks likely to exacerbate her pain symptoms, or alternatively that her pain symptoms would simply prevent her from effectively undertaking. The noise and lighting limitations are based on [Plaintiff's] migraines, as it would be unreasonable to require an individual known to have migraines to work in conditions thought [sic] could be reasonably expected to trigger symptoms. The temperature and humidity limitations are based on [Plaintiff's] OSA, as exposure to such conditions could be reasonably expected to exacerbate known respiratory impairments. In terms of climbing and exposure to hazards, maintaining safety while climbing or being exposed to dangerous mechanical moving parts requires the ability to consistently and effectively manipulate one's extremities and to be constantly aware of one's surroundings. [Plaintiff's] pain symptoms,

11

including those related to her migraines, prevent her from having such consistent ability and awareness, and concentration deficits, caused either by pain or her otherwise non-severe underlying mental impairment, could further expose her to an unreasonable risk of harm when facing such conditions.

(*Id.* at PageID 45-46.)

### E.     Vocational Expert Testimony

The vocational expert (VE) testified that a hypothetical individual of Plaintiff's age, education, and work experience—and with the ALJ's RFC for a reduced range of light work—would be unable to perform Plaintiff's past relevant work but could perform other jobs in the national economy. (AR, Doc. No. 6-2 at PageID 77-78.) In response to additional hypothetical questions, the VE testified that an individual who would be off task more for more than ten percent of the workday or would miss more than one day of work per month would be unable to sustain employment. (*Id.* at PageID 78.)

## IV.    LAW AND ANALYSIS

### A.     Plaintiff's Assignments of Error

Plaintiff does not dispute the medical summary set forth in the ALJ's decision. (SE, Doc. No. 7 at PageID 1081.) Instead, Plaintiff contends that the ALJ "incorrectly created and relied on a residual functional capacity (RFC) that produced relevant work while evaluating [Plaintiff] under prong five of the sequential process." (SE, Doc. No. 7 at PageID 1082.) Specifically, Plaintiff argues that the ALJ erred in formulating the RFC because she did not include any restrictions "based on off task allowances in the workplace, or absences, due to [Plaintiff's] fibromyalgia pain and migraine headaches." (*Id.*) Plaintiff also contends that the ALJ "failed to fully consider essentially vocational

expert testimony." (*Id.* at PageID 1083.) For the reasons discussed below, the Court concludes that these arguments are not well-taken and further concludes that the ALJ's findings are supported by substantial evidence and should be affirmed.

### B.       The ALJ's RFC Is Supported By Substantial Evidence.

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4).

The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). An ALJ may also rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of a VE in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health and Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff contends that the ALJ erred by failing to include a limitation in the RFC for "off task allowances in the workplace, or absences" due to her fibromyalgia pain and headaches. (SE, Doc. No. 7 at PageID 1082.) With this additional limitation, she argues that she could not perform any work in significant numbers in the national economy. To support her argument, Plaintiff relies on her subjective complaints, diagnoses, and some medical records. (*Id*. at PageID 1081-83.)

However, the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence would support a different conclusion. *Biestek*, 139 S. Ct. at 1154. Instead, this Court is limited to determining whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

Here, the Court concludes that the ALJ's findings with respect to the RFC are supported by substantial evidence. The ALJ acknowledged many of Plaintiff's subjective complaints which included allegations of pain in many areas of her body, extreme fatigue, nausea, insomnia, difficulty with exertional activities such as lifting and walking, and difficulty with activities of daily living. (Decision, Doc. No. 6-2 at PageID 45.) He also acknowledged Plaintiff's testimony that her headaches often progressed to migraines that occurred between twelve and fifteen times per month and typically resolved within twenty-four hours of taking medication. (*Id.*)

The ALJ acknowledged that Plaintiff sought emergency room treatment for a migraine in August 2017, several months prior to the alleged disability onset date. (Decision, Doc. No. 6-2 at PageID 44.) The ALJ acknowledged that several treatment

14

providers diagnosed migraines on multiple occasions between November 2017 and December 2021, which was well after the date last insured. (*Id.*) The ALJ compared this evidence to Plaintiff's testimony at the hearing that "she worked despite this condition being at the same severity level as it is now." (*Id.* (citing AR, Doc. No. 6-2 at PageID 63-64).) The ALJ found that Plaintiff required "minimal neurological treatment" for her headaches and that "treatment notes document her migraines as being controlled with Imitrex medication." (*Id.* at PageID 44-45 (citing AR, Doc. No. 6-8 at PageID 923).)

The ALJ also summarized the medical records that documented Plaintiff's treatment for fibromyalgia. (Decision, Doc. No. 6-2 at PageID 43-46.) The ALJ acknowledged that several providers diagnosed fibromyalgia during the relevant time period. (*Id.* at PageID 44.) He also acknowledged that one provider documented tender points in six areas, and other providers noted symptoms such as constipation, somnolence, and nausea. (*Id.*) The ALJ found that the record documented the criteria to establish a medically determinable impairment of fibromyalgia as required by Social Security Ruling 12-2p. (*Id.*) However, the ALJ also noted that physical examinations generally showed normal findings such as a normal gait, full strength, and intact motor functioning and sensation. (*Id.*) The ALJ also stated: "[D]espite her fibromyalgia, she informed treating providers her pain improved with medication." (*Id.*)

The ALJ concluded that the balance of the objective and other evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 6-2 at PageID 46.) He explained that Plaintiff's allegations about her limitations were not fully consistent with the objective medical evidence, as well as Plaintiff's statements to her

15

providers that her migraines resolved relatively quickly. (*Id.*) The ALJ accounted for this evidence by limiting Plaintiff to the reduced range of light work in the RFC. (*Id.* at PageID 42-46.) Because these conclusions are supported by substantial evidence, the ALJ did not err by failing to include additional limitations in the RFC. Again, the Court notes that it is not permitted to re-weigh the evidence and determine whether it would also support a different conclusion. *Biestek*, 139 S. Ct. at 1154.

The Court finds that the medical opinion evidence also provides substantial evidence to support the ALJ's conclusions. The ALJ explained that he was persuaded by the testimony of medical expert Ken Berger, M.D. (Decision, Doc. No. 6-2 at PageID 46-47.) Dr. Berger opined during the March 2024 hearing that Plaintiff had the following limitations: lifting or carrying no more than twenty pounds occasionally and ten pounds frequently; walking at one time for three hours and for a total of six hours in an eight-hour workday; standing for four hours at a time and for a total of seven hours in an eight-hour day; no exposure to unprotected heights; no operating heavy mechanical equipment; no climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, and crouching; no crawling; use of the hands and arms for reaching, handling, fingering, and feeling for no more than two-thirds of the workday; no exposure to extremes of heat, extremes of humidity, or extremes of cold; no exposure to extreme loud noise, such as jackhammering; and no exposure to extreme bright lights, such as on a movie set. (AR, Doc. No. 6-2, PageID 73-74.) Dr. Berger also provided a detailed explanation of why he recommended these limitations and how they accounted for Plaintiff's fibromyalgia and migraines. (*Id.* at PageID 74-75.)

The ALJ's analysis of the persuasiveness of Dr. Berger's opinion complied with 20 C.F.R. § 404.1520c. The ALJ addressed the required supportability factor when he explained that Dr. Berger's recommended RFC limitations "were based on Dr. Berger's review of the record and [Plaintiff's] testimony, along with his years of medical education and training, including directing emergency department education (see Exhibit 11F)." (Decision, Doc. No. 6-2 at PageID 46-47 (citing Dr. Berger's Curriculum Vitae at AR, Doc. No. 6-9 at PageID 1054-66).) The ALJ further explained that Dr. Berger's opinions were "supported by explanation and citations to the record." (*Id.* at PageID 47.) The ALJ addressed the required consistency factor when he found that Dr. Berger's recommendations were consistent with the medical records, explaining: "[T]he record shows [Plaintiff] having mostly minimal findings on imaging, generally good physical examination findings, and responding to conservative care and a release operation." (*Id.*) The ALJ concluded that Dr. Berger's assessment was persuasive and stated that he "adopted his recommendations as [Plaintiff's] residual functional capacity." (*Id.*)

Taken together, the evidence cited by the ALJ constitutes substantial evidence — that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154) — that supports the ALJ's RFC. Because the ALJ's findings are supported by substantial evidence, they cannot be disturbed by this Court even if substantial evidence in the record would support the opposite conclusion.

### C.     Substantial Evidence Supports The ALJ's Step Five Finding.

Plaintiff argues that the ALJ erred by finding that Plaintiff does not require either of the work-preclusive limitations the ALJ included in the additional VE hypotheticals.

17

(SE, Doc. No. 7 at PageID 1083-84.) Plaintiff contends that the ALJ "failed to fully consider essential vocational expert testimony" and so erred by failing to account for "absences or off task behavior that would result from [Plaintiff's] migraine headaches and other pain." (*Id.* at PageID 1083.) Plaintiff's assertion is not well-taken.

Plaintiff correctly summarized the VE's testimony that the limitations for off-task behavior and absenteeism would be work-preclusive. But the fact that the ALJ asked the VE about a hypothetical person with particular limitations does not mean that the VE's answer is binding on the ALJ. Simply posing a hypothetical question to the VE does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019)). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye*, 802 F. App'x at 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). As discussed above, the ALJ's RFC—which did not include such restrictions—was supported by substantial evidence. Accordingly, this portion of the VE's testimony was not relevant to the ALJ's decision.

In sum, because substantial evidence supports the ALJ's decision and the ALJ applied the correct legal standards, this Court is required to affirm the ALJ's decision even if it would have weighed the evidence differently.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 7) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.


          *s/ Caroline H. Gentry*
          Caroline H. Gentry
          United States Magistrate Judge